# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

BEVERLY J. BOLTON,  :

    Plaintiff,  :

vs.  :  CA 13-0548-C

BALDWIN COUNTY PUBLIC  :
SCHOOLS,[1]
    :

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for summary judgment with attached brief and evidentiary materials (Doc. 47), plaintiff's response with attachments (Doc. 49), and the defendant's reply brief (Doc. 50). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 26 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 28 (order of reference).) Upon consideration of the foregoing pleadings, with attachments, and all other relevant pleadings in this case, the Court concludes that defendant's motion for summary judgment (Doc. 47) is due to be **GRANTED**.

---

[1] The real defendant in interest is the Baldwin County Board of Education. (Doc. 47, Affidavit of Jennifer Sinclair, at ¶ 1.)

## FINDINGS OF FACT

On August 12 or 13, 2013, plaintiff was interviewed by the principal of Baldwin County High School, John Cabaniss, and recommended for an open special education teaching position at the school. (*Compare* Doc. 9, at 6 *with* Doc. 47, Sinclair aff., at ¶¶ 2 & 4 and Doc. 49, Exhibit 5 (August 12, 2013 email communications between the Human Resources Department and the high school regarding paperwork Bolton needed to complete before a recommendation to hire could be made).) Cabaniss's recommendation of Bolton was entered into the Baldwin County Board of Education's "Human Resources data base system (CITRIX)[] on August 16, 2013[.]" (Doc. 47, Sinclair aff., at ¶ 4.)

According to plaintiff, August 16, 2013 was the date of the "New Hire" orientation/meeting she attended (*see* Doc. 9, at ¶ 8) and on that date she received paperwork, including New-Hire Packet Information (Doc. 49, Exhibit 7) and an enrollment form to enroll in the Teachers' Retirement System of Alabama, which she signed that very day (Doc. 49, Exhibit 8). The New-Hire Packet Information specifically informed all new employees that "until ***the Board's approval***, employment is not final[]" and that if the Board did not approve employment, the newly hired individual would be "considered a substitute and compensated accordingly." (Doc. 49, Exhibit 7.) Even a "certification" form signed by Bolton on August 23, 2013 makes reference to plaintiff as merely a "PROSPECTIVE EMPLOYEE[.]" (Doc. 49, Exhibit 6.)[2] All of the foregoing is consistent with Jennifer Sinclair's affidavit testimony that "[a]ll certified employees of the Baldwin County Board of Education, including certified special

---

[2] Bolton worked at Baldwin County High School during the entire week of August 19, 2013. (*See* Doc. 49, Exhibit 18.)

education teachers, are not employed by the Baldwin County Board of Education until the Board approves his/her hiring at a Board meeting open to the public." (Doc. 47, Exhibit 4, Sinclair aff., at ¶ 3.)

Following submission of Cabiniss's recommendation of Bolton on August 16, 2013, the Human Resources Office of the Baldwin County Board of Education went about the task of verifying plaintiff's credentials. (Doc. 47, Exhibit 4, Sinclair aff., at ¶ 4.) To this end, it was determined that although Bolton held a Florida teaching certificate, "she did not hold an Alabama Professional Educator Certificate" and, therefore, "she was eligible for Alabama Collaborative 6-12 Certification via reciprocity with Florida[.]" (*Compare id.* at ¶ 5 *with* Doc. 47, Exhibit 1 to Sinclair aff., at 4.) Indeed, Angela Middleton, with the Human Resources Office, sent an email of "high" importance to Principal Cabaniss, on August 20, 2013,[3] therein advising Cabaniss that plaintiff appeared to be eligible for such a certification provided she submit "[a] copy of her score report or registration confirmation for the NEXT ADMINISTRATION of Praxis II #5354, Special Ed Core Knowledge & Applications[.]" (*Id.*)[4] In addition, Middleton

---

[3] On August 19, 2013, Human Resources Supervisor Tiffany Hollingsworth [Kiel] emailed Cabaniss requesting that he have Bolton "resubmit her references on Teach in Alabama[]" since all references who completed evaluations "on-line were her friends[]" and the Human Resources Department needed "three professional references." (Doc. 47, Exhibit 3 to Sinclair aff.; *see also* Doc. 47, Affidavit of Tiffany Hollingsworth Kiel, at ¶¶ 4 & 5 ("I specifically recall that, upon reviewing Ms. Bolton's application, [] all of her references were listed as 'friends.' [] The application instruction specifically outlined that references must be professional (previous supervisors or co-workers).").) And while plaintiff has submitted the affidavits of Harrietta Hall and Mary Rich, both of whom completed "on-line" references for Bolton and who state in their affidavits that they "consider" Bolton a "friend" and a "past co-worker" (Doc. 49, Exhibit 2a, Affidavit of Harrietta Hall, at ¶¶ 6-7; *id.*, Exhibit 2b, Affidavit of Mary Rich, at ¶¶ 4-5), neither Hall nor Rich give sworn testimony that the "on-line" reference was completed in her capacity as co-worker, as opposed to friend (*see id.*).

[4] Middleton copied Bolton with all emails she sent to Cabaniss. (*See id.* at 4-5.) That Bolton received copies of Middleton's emails is clear inasmuch as the plaintiff emailed Middleton on August 23, 2013, to advise that she wished to pursue her "certification in Special Education working with the upper grade level[] at this time." (*Id.* at 3.)

3

advised Cabaniss that she had discussed with Bolton—after the new employee orientation meeting—the State's requirement that all prospective employees who filed applications prior to September 1, 2013 would be "required to complete basic skills testing[;]" however, Middleton also advised Cabaniss that her department was in the process of asking the State for an "update on this issue[.]" (Doc. 47, Exhibit 1 to Sinclair aff., at 5.) The following morning—that is, on August 21, 2013 at 8:49 a.m.—Middleton emailed Cabaniss and advised that the State was continuing to enforce the requirement "of basic skills testing for OTH applications[;]" therefore, in addition to the Praxis II #5354 score report or registration confirmation for the next administration of the test, the Human Resources Office also needed a copy of Bolton's "score report or registration confirmation for the NEXT ADMINISTRATION of AECTP basic skills (reading, writing & math)" in order to "complete the review of Ms. Bolton's credentials[.]" (*Id.* at 4.)[5]

> On August 26, 2013, Angela Middleton addressed the following email to Bolton:
>
> Thank you for faxing your test registration information.
>
> The score reports for the July 13 administration of basic skills testing for which you registered were mailed on August 10 so[] you should have received your score report by now. Please submit a copy of your score report.
>
> The Praxis II document received was printed before your registration was finalized. Please forward a copy of your admission ticket or registration confirmation for the Praxis II.
>
> Lastly, your email below indicates your desire to pursue the Collaborative 6-12 certification (which is required for your current assignment) but[] it does not make clear that you do **not** wish to pursue any other area of certification for which you may be eligible (e.g.[,] Elementary K-6 and Collaborative K-6). Please state clearly your preferences regarding your

---

[5] The State of Alabama Department of Education sent Bolton a letter dated August 22, 2013, advising her that "**verification that you have met the requirements specified above must be received in the Teacher Certification Office within 12 months of the date of this letter**." (Doc. 49, Exhibit 1, at 2 (emphasis in original).)

4

current certificate application so that we may relay the information to the State.

(Doc. 47, Exhibit 1 to Sinclair aff., at 3.) Instead of submitting her score report for the July 13, 2013 administration of the basic skills testing, on August 28, 2013, Bolton emailed information indicating that she had registered for the November 23, 2013 basic skills testing. (*Id.* at 2.)[6] Following receipt of this information from Ms. Bolton, Angela Middleton emailed Jennifer Sinclair and asked whether the department would accept Bolton's registration for the November test date or whether Bolton needed to change her registration date to the one being given on September 28, 2013. (Doc. 47, Exhibit 1 to Sinclair aff., at 2.)

Upon receipt of this information, and because the Board of Education was set to meet on August 29, 2013 to consider Bolton's application, Sinclair contacted Cabaniss on August 28, 2013, and informed him that "the Human Resources Office would be unable to process Ms. Bolton's recommendation and include it on a Board agenda until we had proof of registration for the next administration of her tests in September." (Doc. 47, Sinclair aff., at ¶ 12; *see also id.* ("I asked Mr. Cabaniss to explain the situation to Ms. Bolton and to notify her that she would not be included in a Board agenda until the information was received.").) That same day, Cabaniss contacted Sinclair and informed her

> that he had met with Ms. Bolton and that she had become upset and irrational when he informed her of the need for her to resubmit registration for the next administration of the AECTP. He said he was concerned that he had made a mistake in recommending her. I responded by telling him that I was concerned that she had not been able to complete the required paperwork for her own employment and that, as a special education teacher, the position for which she was being recommended,

---

[6] Bolton was unable to sit for the basic skills testing on July 13, 2013. (*See* Doc. 47, Exhibit 2 to Sinclair aff., at 1-2.)

5

our District would be dependent upon her to complete required paperwork for her students.

(*Id*. at ¶ 13.) Therefore, Sinclair and Cabaniss agreed that the principal would not go forward with Bolton's recommendation. (*Id.*)[7] While Cabaniss told Bolton of the decision that her services "would no longer be needed at Baldwin County High School[,]" Sinclair informed Angela Middleton that "Bolton's recommendation should be cancelled." (*Id.*; *see* Exhibit 1 to Sinclair aff., at 1 (August 28, 2013 email—at 11:31 a.m.— from Angela Middleton to Phyllis Yelding, Gail King, Mona Boyington, and Tiffany Hollingsworth advising of the cancellation of Bolton's recommendation).)

On August 29, 2013, Bolton called Sinclair and left a message "demanding a letter stating why she had been fired." (Doc. 47, Sinclair aff., at ¶ 14.) Bolton also copied Sinclair with an email she had sent Cabaniss demanding the same information. (*Id*.) The email sent to Cabaniss reads, in relevant part, as follows:

> I would like to receive some type of paperwork stating why I was let go, because what you told me in the office didn't add up, and if it had anything to do with something that someone from Escambia county has told the district, they are in violation of court[] orders and Baldwin county wrongfully terminate me without cause. . . . I was terminated wrongfully because of hearsay from a third party who doesn't suppose to talk about the case unless they are involve[d]. I was hired as a Special Education teacher, not a substitute. I wouldn't have driven over [a] hundred miles a day for substitute pay, therefore[,] I expect to get the right pay. Thank you and I look forward to receiving the paperwork concerning why I was fired, because you recommended me on the 16th of August as a full time employee, not a substitute.

(Doc. 47, Exhibit 4 to Sinclair aff., at 1 & 1-2.) Sinclair ultimately responded to this email by letter dated September 12, 2013 (Doc. 47, Sinclair aff., at ¶ 15), and while the Baldwin

---

[7] Thus, as explained by Sinclair, Bolton could not be recommended to the Baldwin County Board of Education to be hired as a certified teacher due to her "failure to properly register for the tests . . . and . . . her failure to provide professional references as demanded from any potential certified teacher[.]" (*Id*. at ¶ 17.)

County Public Schools Human Resources Director refused to "comment on the reasons that [Bolton's] name was not submitted to the Board for consideration," she informed Bolton "that the Board was not and is not aware of any proceedings elsewhere related" to Bolton's employment. (Doc. 47, Exhibit 5 to Sinclair aff.) In addition, Sinclair advised Bolton that she "never attained he status of a regular employee as the Baldwin County Board of Education never took action to hire" her. (*Id*.)

According to Bolton, she was treated differently from Carolina Smoak and Melissa Miller, white employees.[8] (*See* Doc. 9, at 7.) On July 10, 2013, Angela Middleton sent an email of high importance to Cabaniss regarding Smoak requesting copies of several score reports (i.e., an AECTP basic skills score report and a Praxis II #0061 or #5061, Math Content Knowledge, score report) and completion of a form. (Doc. 47, Exhibit 6 to Sinclair aff., at 1.) In response to a portion of the email request, Smoak emailed Middleton—on July 15, 2013—a copy of her Admission Letter for AECTP basic skills testing on August 22, 2013. (*Id.* at 2-3.) As for Melissa Miller, who was recommended for hire as a math teacher, Middleton sent to Cabaniss an email of "High" importance on August 13, 2013, listing Alabama's reciprocity (OTH) requirements and what the Human Resources Department needed from Miller to meet those requirements. (*See* Doc. 47, Exhibit 6 to Sinclair aff., at 4.) And despite Miller's implicit request to be exempted from registering—on or before August 26, 2013—for one of the required math tests, Middleton informed Miller on August 23, 2013, that the Human Resources Department had to be in receipt of "both test registrations . . . no

---

[8] According to Sinclair, Smoak and Miller "provided proper professional references" as requested by her office. (Doc. 47, Sinclair aff., at ¶ 18; *see also* Doc. 47, Kiel aff., at ¶ 8 ("[B]oth Ms. Smoak and Ms. Miller provided proper professional references in their applications. Ms. Smoak and Ms. Miller would not have been hired if they had not provided proper professional references.").)

later than August 27 in order to be able to get [her] name added to the August 29 special agenda meeting." (*Id.* at 7.)[9]

## **CONCLUSIONS OF LAW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen, supra*, 495 F.3d at 1314 ("'When a

---

[9] Miller registered to sit for both required math tests in October of 2013. (*See id.* at 5-6 & 8-9.)

8

moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendant is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp., supra*, 43 F.3d at 599. Accordingly, the Court limits its review to those arguments expressly advanced by the parties.

Prior to addressing the specific claims raised by Bolton in her complaint, as last amended, namely, race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 (Doc. 9, at 7-9), the Court digresses for a moment to comment on the defendant's "reading" of plaintiff's response to its motion for summary judgment (*see* Doc. 50, at 8-10). In its reply, the defendant has construed some of plaintiff's comments in her "Factual Background" section of her brief as "improperly" alleging a "disparate impact claim[.]" (*Id.* at 8.) The undersigned cannot agree with the defendant that Bolton is now attempting to raise a disparate impact claim of race discrimination based upon certain comments inserted into the "Fact" section of her brief in opposition inasmuch as she explicitly states in the "Legal Analysis" portion of her brief that she predicates "liability under Title VII on disparate treatment and also claim

liability under Section 1981, which the legal elements of the claims are identical." (Doc. 49, at 13.) Besides, a *pro se* plaintiff cannot assert new claims for relief at the summary judgment stage of the proceedings. *Compare, e.g., Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.") *with Lolley v. Louisiana Correctional Services*, 2011 WL 4499331, *3 n. 4 (S.D. Ala. Sept. 9, 2011) ("The law in this Circuit is clear that while 'a federal court must liberally construe pro se pleadings, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), such standards do 'not afford Plaintiffs with an opportunity to raise new claims at the summary judgment stage.' *Mortensen v. Mortgage Electronic Registration Systems, Inc.*, 2010 U.S. LEXIS 135876 (11th Cir. 2011)[.]"), *report and recommendation adopted,* 2011 WL 4499320 (S.D. Ala. Sept. 29, 2011), and *Bethel v. City of Mobile, Alabama,* 2011 WL 1298130, *9 n.6 (S.D. Ala. Apr. 5, 2011) ("The law in this circuit is clear that plaintiffs are not permitted to raise new claims in response to a defendant's motion for summary judgment."). Therefore, the Court declines to follow defendant down a rabbit hole of its own making.

**A.   Disparate Treatment Claims Under Title VII and § 1981**.   It is well established that "[c]laims of race discrimination under 42 U.S.C. § 1981 are analyzed in the same manner as claims brought under Title VII." *Coar v. Pemco Aeroplex, Inc.,* 372 Fed.Appx. 1, 3 (11th Cir. Feb. 25, 2010),[10] citing *Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 843 n.11 (11th Cir. 2000). Therefore, "[w]here, as here, an employee attempts to prove discriminatory intent by circumstantial evidence, the claims are subject to the

---

[10]   "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)." *Stinson v. Public Service Tel. Co.,* 486 Fed.Appx. 8, 9 (11th Cir. Aug. 2, 2012).

> Under this framework, the plaintiff may establish a *prima facie* case of disparate treatment by showing that [s]he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. If a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination.
>
> A comparator is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff in all relevant respects. This prevents courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Coar, supra,* 372 Fed.Appx. at *3 (internal quotation marks, citations, and brackets omitted; brackets added); *see also Burke-Fowler v. Orange County, Florida,* 447 F.3d 1319, 1323 (11th Cir. 2006) ("To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action. If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." (internal citations omitted)).

There is no dispute that Bolton meets the first and second elements of her prima facie case of disparate treatment race discrimination under Title VII and § 1981. (*See* Doc. 47, Brief in Support of Motion for Summary Judgment, at 13 ("It is clear that the Plaintiff is a member of a protected class and that, in a sense, adverse action was taken

12

against the Plaintiff.").) Although defendant contends that plaintiff cannot establish the third or fourth elements of her prima facie case (*see id.*), the focus of the Court is on the third element inasmuch as plaintiff has offered no credible evidence that the defendant treated Smoak and Miller more favorably than she was treated.[11] Indeed, what evidence the undersigned has relative to Smoak and Miller indicates that the Human Resources Department of the Baldwin County Board of Education treated these applicants for teaching positions at Baldwin County High School in the same manner as Bolton was treated,[12] Angela Middleton emailing Principal Cabaniss about certain information needed from these two women (e.g., score reports or evidence of registering for required testing, etc.) before they could be recommended for hiring as fulltime teachers.[13] In addition, the Department of Human Resources also required that Smoak and Miller have the professional references requested of plaintiff before sending their names to the Baldwin County Board of Education for hiring on a fulltime basis. (*Compare* Doc. 47, Sinclair aff., at ¶ 18 *with* Doc. 47, Kiel aff., at ¶ 8 ("Ms. Smoak and Ms.

---

[11] The defendant contends that plaintiff has not shown that she was qualified for the position of special education teacher during the application process inasmuch as her failure to properly register for the next administration of the PRAXIS II and AECTP and her failure to submit proper professional references meant that she could not be recommended to the Board for hiring in such position. (*See id.* at 13.) The Court does not necessarily disagree with the defendant's argument in this regard; instead, the undersigned has simply determined that it is better to focus its energy elsewhere.

[12] In her response in opposition, plaintiff makes reference to some unidentified individual who was eventually hired to replace her. (Doc. 49, at 13.) However, she offers absolutely no evidence showing that this individual was given preferential treatment. (*See* Doc. 49.)

[13] As defendant points out, Miller and Smoak, like Bolton, received substitute teacher pay prior to being hired as fulltime teachers. (*Compare* Doc. 47, Sinclair aff., at ¶¶ 3 & 18 ("It is the standard practice of the Board and its schools to hire an employee on a substitute teacher basis prior to Board approval during a meeting open to the public. . . . [B]oth Ms. Smoak and Ms. Miller were paid as substitute teachers prior to being hired by the Board at a Board meeting.") *with* Doc. 49, Exhibit 7 ("Should the Board NOT approve employment, the individual will be considered a substitute and compensated accordingly.").)

Miller would not have been hired if they had not provided proper professional references.").) Because Bolton has provided no evidence that Smoak or Miller were recommended to the Baldwin County Board of Education for hiring on a fulltime basis despite lacking professional references and test scores or evidence of registering for the next administration of the required test(s), she is unable to establish a prima facie case of race discrimination under Title VII or § 1981. Moreover, the defendant's stated reasons for not hiring Bolton as a fulltime teacher—that is, her failure to register for testing on the date of the next administration of the relevant test and her failure to provide professional references—are legitimate and nondiscriminatory, and Bolton has produced no evidence establishing that these reasons were a pretext for unlawful race discrimination. Indeed, plaintiff's statement in her brief that she "she referred to the references as friends, but they are professional educators that the Plaintiff has worked with[]" (Doc. 49, at 14) establishes the contrary, namely, that the "failure to provide professional references" was not mere pretext for unlawful race discrimination. The plaintiff would have to have some proof that the defendant knew when it cancelled the recommendation for her hiring as a fulltime teacher that the persons Bolton admits she referred to as friends were, in fact, professional educators and were references for her in that capacity; however, the plaintiff has provided no evidence that the defendant was aware of the true capacity of plaintiff's listed references. (*See* Doc. 49, Exhibits 2a & 2b, Hall & Rich Affidavits (neither affiant gives sworn testimony that the on-line reference was specifically completed in her capacity as past co-worker).) Moreover, plaintiff has not established pretext with respect to the "test score/registration for relevant test" reason by referring to the contents of a letter she received from the State Department of Education providing that it had to receive "**verification**" within one-year from the date of the letter that she met Alabama's certification requirements (*compare* Doc. 49, at 14

*with* Doc. 49, Exhibit 1, at 2), inasmuch as such "verification" does not do away with the defendant's requirement that the plaintiff have a score report or registration confirmation for the "NEXT ADMINISTRATION" of the tests to be recommended for hire on a fulltime basis as a special education teacher (*see* Doc. 47, Exhibit 1 to Sinclair aff., at 4).

Based upon the foregoing, defendant is entitled to summary judgment in its favor on plaintiff's (Title VII and § 1981) claims of disparate treatment.

B. **Retaliation Under Title VII and § 1981**. "A plaintiff establishes a prima facie case of retaliation by showing that: (1) she 'engaged in statutorily protected activity'; (2) she 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1258 (11th Cir. 2012) (citations omitted);[14] *see also Stinson, supra,* 486 Fed.Appx. at 10 ("'A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.'"). Arguably, given Bolton's wholesale failure to respond to defendant's legal argument that it did not retaliate against plaintiff (*compare* Doc. 47, Brief in Support of Motion for Summary Judgment, at 15-19 (defendant's legal argument) *with* Doc. 49, at 13-15 (plaintiff addresses solely her claims of disparate treatment under Title VII and § 1981)), the defendant is entitled to judgment in its favor on plaintiff's retaliation claim. Nevertheless, even looking at the "merits" of such claim, it remains clear that the

---

[14] "Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." *Id.* at 1257-1258.

15

defendant is entitled to summary judgment on plaintiff's retaliation claim. This is because Bolton did not engage in statutorily protected activity in this case.

"Under Title VII, an employee has engaged in protected activity if she has: (1) opposed an unlawful employment practice, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII's retaliation provision." *Smith v. City of Fort Pierce, Florida,* 565 Fed.Appx. 774, 777 (11th Cir. Apr. 30, 2014) (internal quotation marks omitted), citing *EEOC v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000) and 42 U.S.C. § 2000e-3(a). All of the varied and conclusory allegations contained in plaintiff's complaint as last amended (*see* Doc. 9, at 8-9 (plaintiff's allegations about hearsay from another county, substitute pay, breaching an agreement to hire her versus firing her for not signing up to take a test by a date certain, and failing to give her the same opportunities as Smoak and Miller))[15] are bereft of any relationship with opposition to an unlawful employment practice engaged in by the Baldwin County Board of Education or to the making of a charge under Title VII's retaliation provision. *See, e.g., Satchel v. School Bd. Of Hillsborough County,* 251 Fed.Appx. 626, 628 (11th Cir. Oct. 16, 2007) ("The activities cited in Satchel's complaint, including filing a union grievance, filing an informal complaint of harassment by a co-worker, and writing letters to the editor of local newspapers, do not constitute the type of protected activity contemplated by Title VII because Satchel failed to allege that the complaints included in those documents had any relationship to race or otherwise indicate that the School Board was engaged in unlawful employment practices."), *cert. denied,* 552 U.S. 1315, 128 S.Ct. 1875, 170 L.Ed.2d 752 (2008). In other words, plaintiff did

---

[15] All of plaintiff's allegations focus on "activities" by the defendant, not on any activities in which she engaged.

16

not oppose an unlawful employment practice engaged in by the Baldwin County Board of Education at the time her recommendation for fulltime employment was cancelled [and/or she was terminated], nor had she made a charge under Title VII's retaliation provision at that time. *Compare id. with Bourne v. School Bd. of Broward County*, 508 Fed.Appx. 907, 910-911 (11th Cir. Feb. 1, 2013) ("Under Title VII and the FCRA there are two categories of protected activity: those activities that fit under the 'opposition clause' of 42 U.S.C. § 2000e-3(a) and those activities that fit under the 'participation clause.' . . . The district court focused on whether Bourne's activity fit under the 'opposition clause' and determined that it did not. Bourne does not challenge this determination. And our review of the record supports the district court's determination that her activities were not protected on these grounds. Bourne argues that the district court erred by failing to consider whether her actions constituted 'protected activity' under the 'participation clause' because her actions properly fit in that category. The participation clause protects an employee who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under the relevant section. . . . Bourne's argument fails. Contrary to Bourne's argument, she cannot find refuge under the 'participation clause' on the grounds that she filed a complaint with the School Board's internal EEO office prior to submitting applications for the vacant positions. This Court has explained that the participation clause 'protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.' *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) . . . . At the time Bourne applied for the vacant positions, she had not yet filed a charge with the EEOC or otherwise instigated proceedings under the statute. Therefore, her conduct does not come under the

'participation clause.'"), *cert. denied,* ___ U.S. ___, 133 S.Ct. 2836, 186 L.Ed.2d 893 (2013). Because Bolton did not engage in statutorily protected activity, she has failed to establish a prima facie case of retaliation under Title VII or § 1981.[16] Accordingly, summary judgment is properly granted in defendant's favor on plaintiff's retaliation claim under § 1981 and Title VII.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Doc. 47) is **GRANTED**. The plaintiff is to have and take nothing from the defendant and her complaint, as last amended (Doc. 9), is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this 19th day of September, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[16] The undersigned recognizes, of course, that Bolton filed a complaint with the EEOC (*see, e.g.,* Doc. 9, Attached Dismissal and Notice of Rights); however, this complaint was filed after cancellation of the recommendation that she be hired on a fulltime basis as a special education teacher (*compare id. with* Doc. 9, ¶¶ 13-15). And while the filing of such complaint is protected activity, Bolton "did not engage in this activity while she was still employed by the School Board and, thus, [she also] has failed to establish a causal connection between the protected activity and her termination from employment [or the school board's failure to hire her on a fulltime basis], which is necessary to sustain a claim of retaliation." *Satchel, supra,* 251 Fed.Appx. at 628.